Good morning, and may it please the Court, I'm Joe Stulegros, arguing on behalf of plaintiffs, appellants in this case. This is a case involving employees and their retiree insurance benefits, health insurance benefits. Employees, upon retirement, have completed all of the labor necessary in order to fulfill their part of the contractual obligation. The employer has not, however, for those employees who have qualified for a pension, they've earned a lifetime pension benefit. For those employees who have qualified for a pension, this collective bargaining agreement also provides for retiree health insurance benefits. The question in this case is whether the parties intended that health insurance benefit to be a short-term kind of transitional benefit that would end for all purposes at the expiration of the collective bargaining agreement, or whether they, on the other hand, as appellants argue, intended the duration clause to have no impact on the provision of health insurance benefits for those employees who had already retired under the contract. But isn't that also true for people who retire between 2003 and 2012? Yes. So if they're not being treated differently, they're now being treated the same as people who retired in that period as well, who had also fulfilled their conditions of employment, correct? Yes. This case involves benefits for people retiring between 1989 and the present. Yes, I'm aware of that. I'm simply, you seem to be positing it, being significant, that the category is one of people who have already completed their service pre-2003, which is quite correct. No. But it's in the same, that just puts them in the same boat as other retirees who completed their service from 2003 until. So for people who, I'm not totally sure I understand your question. But I don't think there's a distinction between pre-2003 and post-2003. Except that they're, well, they were being treated differently and now they're not. And I'm sorry, I'm only, I was, what was troubling me a little is that you seem to be characterizing the pre-2003s as being affected after they had done everything they could to obtain the benefits that they requested, whereas it's equally true for the post-2003 whose benefits were also capped. Okay. So the people who retired since 2003 retired under a contract which included as part of that contract a limitation, a cap on those benefits. We do not contest that the employer has the right to impose that cap in accordance with the terms of the parties agreed. We question and challenge the right of the employer to impose that limitation on people who retired under a contractual agreement which did not include that limitation. And by the way, the cap letters themselves, as our argument in the brief, cannot be interpreted any other way than if the benefits continue beyond the expiration of a collective bargaining agreement. The cap letters- And can't you interpret them to mean we're probably going to keep renegotiating these collective bargaining agreements, they will probably continue to include a health benefit, and if that is true, heads up, there's going to be a cap. Yeah. We'll probably- I mean, you said there's no other way to interpret them. That seems totally straightforward to me. Right. Okay. So- That's one other way. That's one other way. So there may be a couple different ways to interpret, but let's think about that for a minute. Yeah, we're probably going to renegotiate these benefits, and if we do, there's going to be a cap. What kind of limitation does that really put on the parties? There's no reason to have the cap negotiated in 2003 if the parties, next time around, could just negotiate a cap. They're putting a cap on something that's actually not an ongoing obligation, if you interpret the contract in the way you just suggested. So it really cannot be interpreted that way. Now- I'm not so sure that the parties couldn't just decide to put this off for another day, and maybe they could agree on the cap language, but they couldn't agree on- I mean, I'm not- I hear what you're saying, but I'm not sure that that's necessarily true. So the cap letter doesn't take- the parties agree to a whole negotiated mechanism of, you know, well, how much is the cap? Where does it get applied? When does it get applied? How do you calculate it? It goes into place in January 1 of each year. Why do you go about negotiating some elaborate procedure like that if, in fact, the employer doesn't have any obligation to continue the benefits? Maybe they'll negotiate them. But remember, this is a collective bargaining agreement, and these are governed by the National Labor Relations Act. Under the collective bargaining agreement, the union doesn't have any authority to require the company to renegotiate that benefit. It's a permissive subject of bargain. It has, in fact, been renegotiated over a course of several CBAs, right? Yes. Well, I would say that the retiree insurance benefits have continued over a number of years, and the parties have continued to provide retiree insurance benefits. I think that's sort of a fundamental question about your argument. I just want to make sure I understand your position. Is your position that if there is some ambiguity in this agreement created by the cap letters, then we should look at extrinsic evidence? Yes, that's correct, Judge. It's true we did file a motion for summary judgment in the district court. That motion was denied when the court granted the other motion. And so we do believe that the contract is clear because the collective bargaining agreement can't be interpreted any other way. But Quesenberry is a case that's on point on that. But the challenge here, but the answer to your question is if the contract is ambiguous, the court should have considered extrinsic evidence, or the fact finder should consider extrinsic evidence. Let me ask you about that because isn't it possible to read that recent Supreme Court case? Tackett. Yeah, a little bit differently as suggesting that if it's ambiguous under general contract principles, you don't assume that these benefits are beyond the contract. This is an easily misunderstood part of the Tackett opinion. Tackett says we do not infer a lifetime benefit in an ambiguous contract. The context of that discussion is that we do not apply a canon of construction in a collective bargaining agreement on retiree insurance. We do not rule for plaintiffs in the absence. Yeah, I get the context. I understand the context. So in other words, Tackett does not say how do you determine whether a contract is ambiguous, and Tackett does not say if it is ambiguous, you don't send it to the fact finder. You just say no. I don't know. It says that the court of appeals failed to consider the traditional principle that courts should not construe ambiguous writings to create lifetime promises and also failed to consider the traditional principle that contractual obligations will cease in the ordinary course upon termination of the bargaining agreement. That's 35 Supreme Court at 937. It's quoting the printing division. The language is pretty clear. It's about as crystal clear as the Supreme Court ever gets. I don't think so. So here's the idea. The Supreme Court is saying, look, the Sixth Circuit, you've made a mistake. One of the mistakes you made is you found that some of these retiree agreements have a lifetime benefit, even though you have a duration clause, when the Sixth Circuit is basically saying the duration clause is of no import, a general duration clause. So when the Supreme Court says you don't construe ambiguous promises to confer lifetime benefits, it's talking about the court. It's not talking about the fact finder. What happens if you have an ambiguous contract? You send it to the fact finder. In this case, there's a jury. You don't just say no. And that is made even more clear by the concurrence point. Look, you've got no clear statement rule. If there's no clear statement rule, that means ambiguity must mean something. Right, but we can't go by the concurrence, right? That's four votes. Well, it's four votes. Because they don't agree with what the majority did. And maybe we don't either. Well, I understand that. So there you go. I understand that. But the point is the majority does not reject what the concurrence has said. If the company certainly knew how to vest, didn't it? It vested in the pension plans. It had expressed reference to vesting. So it knew how to do that if that's, in fact, what it wanted. That's correct. So why is it not inferable from the fact that it knew exactly how to do what you wanted and didn't do it? Well, that's an inference. But in this case, it's not a clean inference. Well, neither are the inferences you're asking us to draw about the impact of the cap language. So if you have different inferences that go both ways, what do you have? You have an ambiguous contract. Traditional rules of contract interpretation say an ambiguous contract goes to the fact finder. That's what the court asks for. And the traditional rule of interpretation says seek the intent of the parties. That's the clarion call of Tackett. Seek the intent of the parties, not that you apply some new rule about continuous promises or lifetime promises. We're not seeking a perpetual contract here. We're not seeking perpetual benefits. There are all kinds of contracts that create lifetime benefits, pensions being the most clear example. What happens in pensions, which makes it not a clean inference, is that there is a statute that requires not only that there be lifetime benefits for pensions, but that promise be contained in the plan document. They're required by statute to do that. So if you're really requiring that the benefits be stated as clearly as a pension, basically you're just imposing a clear statement rule. There's no clear statement rule. Is there a current agreement in effect? A current collective bargaining agreement, yes. Is it somewhere in this record? I don't believe so. Well, what does it state on this issue? The cap letter, as included in the 2010 agreement, is continued without change. The benefits for the employees who retire under the new contract are in accordance with the cap letter restrictions in terms of, for example, the Medicare subsidy cap. That was reached by collective bargaining between the company and the union after a strike. Is there any talk about vesting? There is no change to the underlying contractual language, no change to the SPD, no change to the duration language, no change to the promise of benefits upon the retiree's death, no change to the pension surviving spouses language. The pension surviving spouses is a promise that's stamped right on the cover of the document, and it's a fundamental point, a fundamental benefit. So the question is, in order for a pension surviving spouse to get that benefit, you have to have a retiree who retires, has a retirement of something less than three years, the length of a collective bargaining agreement, and then the benefit is continued when the surviving spouse takes over. But most retirees are going to have a benefit longer, are going to live longer than three years. So if that's the case, there's just a lot of people, a lot of surviving spouses who are not going to get that benefit. It doesn't seem likely, given the fundamentality of that promise. I'd like to raise one other point, and that is the 1989 agreement, the sales agreement, the guarantee that Kaiser made. Kaiser, remember, is the entity that negotiated the original language that is in dispute in this case. That document, just like the cap letters, cannot be interpreted any other way than that the parties intended benefits to continue beyond expiration of the agreement. The reason for that is, in 1989, the parties promised, and Kaiser guaranteed, that it would provide the same benefits to employees that they would have had, had the plant shut down in 1989. And that promise was good between 1991 and 1994. But the contract expired in 1990. So if the benefit expired at contract expiration, Kaiser knew it was not going to be renegotiating any new contracts. It was selling the plant. So if Kaiser was promising something that was going to be good in 1991 or 94, that same benefit must have continued beyond expiration. There's no other interpretation for that document. This is something that relates to the intent of the negotiating parties, pursuant to the clarion call of Tackett, intent of the parties is what you should be looking at. There's no reason to avoid looking at the intention of the parties. I've got a few more seconds, but I'll yield that to the next incoming party. Thanks. Good morning, Your Honors. May it please the Court, Christopher Wales, on behalf of the Appalese Constellium and the Benefit Plan. This case concerns the medical benefits of individuals who retired from the Ravenswood plant prior to January 1 of 2003. The cap letters that Mr. Stoolagross has been discussing do not apply to those retirees. That is, at the time that they retired prior to 2003, the operative documents were the collective bargaining agreement and the summary plan description. And both of those documents expressly stated that retiree medical benefits, quote, shall remain in effect for the term of the labor agreement, close quote. This language expresses the party's clear intent. Mr. Stoolagross talked about the need to look to intent. Well, the starting point, as this Court has said in Royal Cole, in the Kepher case, in Quesenberry, that we begin by looking at the language of the party's agreement for any clear manifestations of the party's intent. It's our position that the intent of the parties is clearly expressed in the agreement by virtue of the durational clause. The district court read that language and said that it was clear and unambiguous and that retiree medical benefits did not, in fact, survive the expiration of the collective bargaining agreement. When this Court, in the Dewhurst case in 2011, saw this identical language, which involved a different part of this facility but it was the same collective bargaining agreement, the identical durational language, this Court that said that it was direct and plain in limiting the duration of retiree medical benefits to the term of the labor agreement. So the district court's decision rests firmly on traditional principles of contract law, of the decisions of this Court, as well as the Supreme Court's decision in the M&G Polymers v. Packett case. All of the textual arguments that the plaintiffs make would render the durational language a nullity. They never really explain why or how the parties would agree to durational language, yet hide their intent in the summary plan description and elsewhere. If those provisions were intended to grant vested benefits, the durational clause has no meaning, and thereby violating a basic tenet of contract law that we should read all the provisions in a manner that gives them a force rather than in a manner that renders some of them meaningless. So the cap letters, which is really the thrust of the appellant's argument, in our opinion are really something of a red herring. As I mentioned, they apply only to the post-2003 retirees. And this case involves pre-2003 retirees. So when the members of the class who's challenging the imposition of this cost-sharing mechanism on them, at the time they retired prior to 2003, there were no cap letters in effect. So what the appellants are doing is asking that the court somehow look to agreements that were reached after these people were retired to reflect back somehow on the intent of the parties at the time when the cap letters didn't exist at all. And the only operative language was that found in the collective bargaining agreement and the summary plan description. Plaintiffs also or appellants also gloss over the fact that there were three of these cap letters entered into in 2002 and 2005 and then again in 2010. Two of those letters do have a date for contributions taking effect, which is after the expiration of the collective bargaining agreement. The third cap letter says that the contributions will kick in during the term of the collective bargaining agreement, which is really inconsistent with the plaintiff's argument that these cap letters somehow reflect an intention to have the benefits survive the expiration of the collective bargaining agreement. In that respect, we believe the Quisenberry case, which the plaintiffs heavily rely upon, is not really analogous here at all and can be easily distinguished. The first ground is that in the Quisenberry case there were two provisions, one dealing with coverage and one dealing with cost. The coverage provision had durational language in it. The cost provision did not. In fact, the record showed that the parties had attempted to get durational language in that provision, but it was deleted and withdrawn at the bargaining table. There was a cost paragraph that didn't have any durational limitation, unlike the coverage paragraph. At that point, the court said, well, how do I ascertain the party's intentions? I need to look beyond the language of this particular provision. Right from the get-go, our case is distinguishable because we have a single durational clause which is in Article 15 of the collective bargaining agreement, which applies to both active and retiree medical benefits, which states that those benefits remain in effect for the term of the agreement. So the Quisenberry situation is not really relevant or applicable here because there's no sort of void in terms of what the parties intended with regard to the duration of the benefits. So, Counselor, your bottom line is that the agreement here is not ambiguous, right? That is correct, Your Honor. Okay. And what if it is ambiguous? What happens then, in your view? Okay. So you raise the point correctly of the M&G Polymers case in the statement in the court's opinion that we should not construe ambiguous writings as creating lifetime promises. There's a little bit of tension between that and sort of traditional rules of contract interpretation. So if there were an ambiguity, then you would need to consider extrinsic evidence. I think that's a generally accepted rule of contract interpretation and one that's reflected in Justice Ginsburg's concurrence, which was not the opinion of the court. But to say that if there's ambiguity that the inquiry ends there, it's certainly a way to read the M&G Polymers decision. There's a little bit of tension between that and the decision, say, of this court and other courts with regard to- But we had referred in the past to a clear statement, a clear intention. We look for a clear intention. A clear manifestation of intent, I think, is the standard that this court has repeatedly used. That's the formulation of- How is there a clear manifestation of intent? Pardon? If it's ambiguous, where's the clear manifestation of intent? Well, if- You're saying they can go back. The writing is ambiguous, but you can look at the extrinsic evidence. Go ahead. Do you say that? Is that what- Yeah, I'm trying to make sure. I was taking it to mean, perhaps, apparently incorrectly, that you are suggesting that if it's ambiguous, you can nevertheless look at it for interpretive guidance? Is that what you're saying, the durational language? I must have misunderstood. We believe that the durational language itself expresses the party's intention. It is unambiguous. If you were determined- I'm sorry, go ahead, Your Honor. So, where do you go, then? Would you look to the cap letters that you are saying were not extant at the time these individuals retired? What would you look to? That would be one of the things that could be considered. So, in our position, the cap letters, as the district court ruled, are, in fact, extrinsic evidence with regard to these retirees because they were not a part of their collective bargaining agreement. They were part of later agreements. So, you look at those letters and say, do they shed any light on this? Is that the context in which you look at the vesting language as instructive? I believe that that is sort of at the pre-ambiguity stage. I think that if you're going to look at the vesting language, that is sort of part and parcel of the collective bargaining agreement or the summary plan description. So, if you need to go beyond those documents, you conclude that this durational language is ambiguous, then you look to other indicators of intent. And as Mr. Stuhliger has pointed out, the retirees and the union move for summary judgment on this case. So, we had cross motions for summary judgment in which there was no dispute as to what the underlying evidence was, including the extrinsic evidence that they have pointed to. Just so I'm clear, I have a lot of questions, but your argument is that these cap letters are extrinsic evidence? They were part of the agreement at some point in time. From the time that they were signed going forward, they were attached to the collective bargaining. We don't dispute that if you retired after 2003, you are covered by – those are parts of the agreement. Extrinsic as to a post-2003 plaintiff, but extrinsic as to a pre-2003 retiree? That is correct, Your Honor. That's your position? Yes. Okay. I'm sorry if I didn't make that clear. I'm having more fundamental difficulties. I think I've read this Tackett case a little differently than you have. Generally, we go with what the majority of the court says is the holdings. Okay. Now, I thought that you just told me, yes, your position is that the contract collective bargaining agreements are not ambiguous. That's correct. But if we should conclude that they are ambiguous, you believe that we can look at extrinsic evidence and determine what the contract – what are we to determine with this extrinsic evidence? Your Honor, let me answer the two questions. So maybe I jumped the gun in terms of – I mean, there is the statement in the opinion of the court. It was a unanimous opinion in the Tackett case, right, that you should not construe ambiguous writings to create lifetime promises. Right. So that would be a firm ground on which to conclude that even if this agreement were ambiguous under the Tackett case, you could still conclude that you cannot infer a lifetime promise and therefore no – You haven't led with that argument, which makes me think maybe I have misread this case. So what is your argument about – you didn't say that to us to begin with. You said if we conclude that it's ambiguous, then we go look at extrinsic evidence. Well, Your Honor, I was trying to sort of reconcile what is – there's a lot of case law on this. There have been subsequent decisions following Tackett. There is that – Supreme Court decision. Pardon? Supreme Court decision. No, Your Honor, there haven't. So as I said, maybe I should step back and say that the statement that you quoted from the unanimous court opinion in Tackett does support the court concluding that even if the language in this agreement is ambiguous, then there is still no inference of a lifetime promise. I think that our alternative and secondary argument would be that under principles, general principles of contract interpretation that this court has applied, that if there is an ambiguity, you would look to other evidence as an indication of the party's intent. Now, we don't believe it's necessary to do that. The district court did consider some of that extrinsic evidence that the plaintiff had offered, and I think the district court was guided in part by the fact that Judge Copenhaver, district court judge, had written a decision a few months earlier in the Dewhurst case, which was a remand from the case I mentioned before, in which Judge Copenhaver had gone through very systematically each of the extrinsic evidence that had been put forward by the plaintiffs in that case. And it was the same bargaining history. It was the same documents. It was the same contract because these two facilities, the one at Dewhurst in our case, were under common ownership for a while and then eventually split off. But Judge Goodwin in our case, you know, after concluding that the language was unambiguous and clear and that the durational clause expressed the intent of the parties, went on to essentially agree with Judge Copenhaver with regard to that other evidence that had been put forth as extrinsic evidence and essentially concluded that it made no difference to the outcome. And it's really true that each of the things that the appellants point to, these references to surviving spouses, to benefits of dependents concluding upon death, all of those can be construed and interpreted in a manner that's consistent with the durational clause. Namely, that if the retiree dies during the term of the collective bargaining agreement and these benefits are still being provided, then the surviving spouse is eligible for those benefits to continue. So, you know, there is no inconsistency between reading those statements in the summary plan description and elsewhere, which refer to things like death and surviving spouse, as being consistent with the durational clause.  You know, why would, as I said, you know, why would you, why would the parties hide their intention in these statements? And there is clearly no vesting language anywhere to be found. There's nothing that explicitly promises that these benefits will continue, notwithstanding the expiration of the collective bargaining agreement. The only thing there is is this language that says that the benefits last as long as the collective bargaining agreement does. So, just very difficult, and I think the district court agreed, to find that those statements and terms that were used in the summary plan description somehow override, contradict, because the plaintiff's position and the appellant's position below was that the agreements were clear. The agreements in conjunction with the extrinsic evidence were clear and that there was no issue of fact to be tried in this case, and the district court had all the information that it needed at its hands in order to make that decision, and we believed it so correctly. If there are no other questions? Thank you very much. Counsel admits that a rule that says ambiguous contract. Can you talk just a little louder? I'm sorry. A rule that says that a contract should be interpreted, that the court should not infer that an ambiguous contract creates lifetime promises, that if you apply that as a rule in this case or any other case, that that's not in accordance with traditional rules of contract interpretation. Now, why can we be sure that in this case Tackett's not creating any new rule like that? So Tackett relies on the Litton case that says that ordinarily a contract expires when it's done, but if you look at that Litton case, Supreme Court case, the case also says that exceptions to that rule are determined by contract interpretation. Litton also says that the constraints upon an employer that arise after expiration of a contract may be expressed in expressed or implied terms. There's no obligation that that statement be clear in the contract. Now, Judge Harris, you were referring to this clear manifestation of intent that appears in certain cases in certain places. It cannot be that that clear manifestation must be language in the contract. What is certainly permissible is for the contract to be ambiguous on the point, the court then to remand for a factifier's determination of the weight to be afforded to different kinds of extrinsic evidence, and then at that point, if there is no clear manifestation of intent, then the jury can't find that the contract provided a lifetime benefit, or if they do, the court would overturn it. Can I ask you a question about the status of these cap letters and whether they are extrinsic or intrinsic evidence? Yes. What is your position on that? None of the cap letters is extrinsic for any purpose. And why not if they were issued after the plaintiff's retired? Okay. So obviously they're contractual documents for those retiring after 2003. The Transportation Communication Workers Supreme Court case says that the court is obligated to consider other related collective bargaining agreements. This is a collective bargaining agreement. It relates to the intent of the parties. But that sounds like it's extrinsic. It's a different agreement. It wasn't the agreement under which these plaintiffs retired. It may well shed light on the party's intent. That's extrinsic. Well, the court, Transport Communication, says it is necessary to consider them. The court doesn't say you only consider them under certain circumstances. It says it is necessary to consider them. Just explain it to me in sort of layperson's terms. The idea is this is really all one big agreement, the collective bargaining agreements, it's all just one agreement? The structure of the cap, yes, that's correct. And the SPDs as well? The SPDs are incorporated into the collective bargaining agreement, the 1985, 1992, 1995 SPDs. There are some SPDs that were issued unilaterally by the company and never actually agreed between the parties. The 2005 SPD is the best example of that. The company mentioned the Dewhurst case as relevant here. The Dewhurst case does not consider cap letters because they did not apply at the side of the plant where this case takes place. The Dewhurst case is no help in understanding how to make sense of the 1989 Kaiser guarantee. Remember that guarantee is made by the entity that negotiated the original language. Now, you were talking about what's going on with the benefits now and so on. The reason that this case is so difficult and so challenging because actually the changes that have been implemented are relatively minor. But the import of the case is that if the benefits can be changed after termination, after expiration of the contract, they can also be terminated for all of these retirees. It's a horrible, horrible thing that could happen to these people. We ask for your help to restore these benefits. Thank you. Thank you.
judges: Diana Gribbon Motz, Allyson K. Duncan, Pamela A. Harris